UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HECTOR VALLES,

    Plaintiff

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

No. EDCV 15-0432 (KS)

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

On March 6, 2015, Hector Valles ("Plaintiff"), filed a Complaint seeking judicial review of a denial of his application for a period of disability and disability insurance benefits ("benefits".) (Complaint, ECF No. 1.) On August 17, and 26, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Consents, ECF Nos. 23, 24.) On December 29, 2015, the parties filed a Joint Stipulation, whereby Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and Defendant seeks an order affirming the Commissioner's decision or, in the alternative, remanding the matter

for further administrative proceedings.  (Joint Stip., ECF No. 32).  The Court has taken the Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 4, 2012, Plaintiff filed an application for benefits, alleging disability beginning November 1, 2001 due to an above-elbow amputation of his left arm with phantom limb pain and right-sided carpal tunnel syndrome as well as hypertension, headaches, gastroesophageal reflux disease, back pain, knee pain, and depressive disorder. (Administrative Record ("A.R.") 11; 13-15.)  Plaintiff's claim was denied initially on August 29, 2012 and upon reconsideration on March 6, 2013. (A.R. 11; 85-88.)  On March 20, 2013, Plaintiff requested a hearing, which was held on October 9, 2013.  (*Id*.)  Administrative Law Judge Paul Colter ("ALJ") presided over the hearing which included testimony by an impartial vocational expert ("VE") and Plaintiff who was represented by an attorney.  (A.R. 11; 20.)  In a written decision dated November 29, 2013, the ALJ denied benefits determining that Plaintiff suffered from non-severe impairments.  (A.R. 8-24.)  On January 7, 2015, the Appeals Council denied Plaintiff's request for review of that decision.  (A.R. 1-3.)  Plaintiff then filed this civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ utilized the five-step sequential evaluation process to determine whether Plaintiff was disabled.  20 C.F.R. § 416.920.  At the first step, the ALJ found that Plaintiff had engaged in substantial gainful activity during   2006 repairing washing machines (DOT[1] 627.261-010 SVP 7, medium) and as a general helper at Goodwill (DOT 919.683-014, SVP 2, light), but concluded there had been

---

[1] "DOT" refers to the Dictionary of Occupational Titles.

a continuous 12-month period(s) since the alleged disability onset date during which Plaintiff did not engage in substantial gainful activity and based the reminder of the findings on the period when Plaintiff did not engage in substantial gainful activity. (*Id.*) (A.R. 13.) At the second step, found that Plaintiff suffered from the following severe impairments: "amputated left arm (above elbow), with phantom limb pain; and right-sided carpal tunnel syndrome." (A.R. 13.) The ALJ noted that Plaintiff alleged other impairments, including hypertension, headaches, gastroesophageal reflux disease, back pain, knee pain, and depressive disorder, but found that these impairments did not individually or in combination "cause more than minimal limitation in the [Plaintiff's] ability to perform basic work activities," and, on that basis, found that these additional impairments were non-severe. (*Id.*)

At the third step, the ALJ considered Plaintiff's impairments and determined that such impairments did not meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (A.R. 15-16.) Next, after considering Plaintiff's questionnaire and testimony, medical records (including MRIs, X-rays, progress notes, records of taking medication, a consultative exam by Dr. Sean To M.D., and the opinions of four state agency consultant physicians, Tim Schumacher, PhD, Kevin Gregg, M.D., F, Kalmar, M.D., and J. Hartman, M.D.), the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to

perform "light work" as defined in 20 CFR 416.967 (b), except he is able to lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; stand/walk for about 6 hours out of 8; sit for about 6 hours out of 8; frequently perform postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling; and never climb ladders, ropes, or scaffolds. Regarding his left upper extremity, [Plaintiff] cannot reach, handle, finger, or feel. Regarding his right (dominant) upper extremity, he can

frequently handle and finger.  Lastly, [Plaintiff] must avoid concentrated exposure to extreme cold, vibration, and hazards, such as machinery and heights.

(A.R. 19.)

At the fifth step, the ALJ considered Plaintiff's RFC, "age, education, work, experience," and the VE testimony to  conclude that Plaintiff can perform "jobs that exist in significant numbers in the national economy." (A.R. 19.)  This was based on the VE's testimony that "given all of [the limiting] factors [a hypothetical] individual would be able to perform the requirements of representative occupations such as surveillance systems monitor (Dictionary of Occupational Titles ("DOT") 379.367-010, unskilled, SVP 2, sedentary), with 5,000 positions nationally and information clerk at a call center (DOT 237.367-046, unskilled, SVP 2, sedentary), with 80,000 positions nationally." (A.R. 19-20.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, [reviewing courts] uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  The Court will

also not reverse the Commissioner's decision "[w]here evidence is susceptible to more than one rational interpretation," even if it were to disagree with the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the ALJ has properly considered all of the limitations for which there is record support, the ALJ's RFC determination will not be overturned so long as the ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). However, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006).)

Courts must "remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."

1   *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *see also Burrell v. Colvin*,
2   775 F.3d 1133, 1140-42 (9th Cir. 2014).

3

4                                              **DISCUSSION**

5

6           Plaintiff challenges the ALJ's decision on the following two grounds, that: (1)
7   the ALJ's adverse credibility assessment of Plaintiff was not supported by
8   substantial evidence;   and (2) there was an inconsistency between the DOT job
9   requirements   and   the ALJ's holding that Plaintiff "can perform the jobs such as
10  surveillance systems monitor and information clerk at a call center."  (Joint Stip. at
11  3.)

12

13       **1.  The ALJ's Credibility Assessment Is Legally Sufficient and Supported by**
14       **Substantial Evidence.**

15

16          The ALJ found that Plaintiff's "statements concerning the intensity, persistence
17  and limiting effects of [the alleged] symptoms are not entirely credible."  (A.R. at
18  17.)

19

20               **a.  Legal Standard for Assessing A Claimant's Credibility**

21

22          An ALJ must make two findings before determining that a claimant's pain or
23  symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d
24  1090, 1102  (9th Cir. 2014). "First, the ALJ must determine whether the claimant
25  has presented objective medical evidence of an underlying impairment which could
26  reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting
27  *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that
28  evidence, and the ALJ has not determined that the claimant is malingering, the ALJ

must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

### b.  The ALJ's Analysis of Plaintiff's Credibility

The ALJ evaluated Plaintiff's statements and hearing testimony, which the ALJ summarized as follows:

The claimant alleges he is unable to work due to injuries he sustained in a motor vehicle accident on his alleged onset date, November 1, 2001. Specifically, the claimant as in a coma after the accident, and his left arm was amputated above the elbow when he woke up. He has had 2 prosthetic devices for his missing left arm, but they do not work. He still experiences phantom limb pain. He also experiences lower back and knee problems, especially on the left side, as well as high blood pressure, depression, and carpal tunnel syndrome in his right upper extremity, which causes numbness and pain in his wrist and hand. He only has 50% use of his left leg, and cannot hold objects with his right hand. He describes his pain as constant and severe (10 on a scale of 10), and said he spends his days watching television and napping. His medications cause side effects like dizziness, nausea, weakness, constipation, and tiredness. He can only walk about one block before needing to stop and rest for 15 minutes. Overall, his impairments affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, use his hands, and get along with others.

(A.R. 16-17.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 17.) While the ALJ noted that examining physician, Linda Smith, MD, "observed that [Plaintiff] was probably trying to manipulate her, and that he probably was not compliant with his medication" (A.R. 18), the ALJ did not determine that Plaintiff was malingering.

### i. Specific, Clear, and Convincing Reasons Supported by Substantial Evidence

The ALJ must "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). Plaintiff argues that although "the ALJ briefly summarized plaintiff's testimony and statements, the ALJ did not provide which statements he specifically accepted or rejected nor did he provide clear and convincing reasons for rejecting plaintiff's testimony and statements." (Joint Stip. at 5.)

The ALJ did, in fact, identify specific inconsistencies that cast doubt on Plaintiff's credibility as a whole. The ALJ noted that "although [Plaintiff] consistently reported phantom limb pain and medication side effects to treatment providers, he worked after his alleged onset date, including skilled, medium jobs, which he performed at substantial gainful activity levels." (A.R. 18.) Although Plaintiff "indicated that he is unable to perform any activities of daily living," he also indicated that "he did not perform any of these tasks prior to his alleged onset date." (*Id*.) Further, the ALJ observed that Plaintiff's medical examinations "routinely document largely normal physical and mental functioning." (*Id*.)

On this record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's credibility. *See Orn*, 495 F.3d at 636 (ALJs may use inconsistencies between the plaintiff's testimony and prior statements, conduct, and daily activities as grounds for discrediting the plaintiff's subjective symptom testimony); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (a claimant casts doubt on his claim of disability by holding himself out as capable of working after the alleged onset date); *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1227 (9th Cir. 2009) (An ALJ may properly discredit a claimant's testimony where he worked and sought out other employment after the alleged onset of disability).   Further, the ALJ's credibility determination is supported by substantial evidence in the record.

## ii.  Substantial Evidence Supports the ALJ's Adverse Credibility Determination

Besides his own testimony, little in Plaintiff's objective medical record supports a finding of disability from the alleged onset date of November 1, 2001. Plaintiff's medical history is comprised largely of records from 2012 to 2013, with the exception of records dating from his left arm amputation and left knee surgery following his automobile accident in late 2001 (A.R. 273-83), and a single psychiatric evaluation dated October 13, 2009, where Dr. Smith concluded Plaintiff's "psychiatric prognosis is fair." (A.R. 203.)   The ALJ only gave Dr. Smith's assessment "some weight" and noted that the "remainder of the evidence of record . . . fails to demonstrate any deficits in the [Plaintiff's] mental functioning." (A.R. 14.)

After his amputation and knee surgery, there appears to be little or no objective medical evidence—aside from the prescription of pain medication—

corroborating Plaintiff's complaints of "really bad" back pain five times per week, knee pain every day, "really bad" hand and arm pain, depression or any mental health conditions.  (A.R. 37-41, 255, 262).   The ALJ also noted that despite objective evidence of  carpal tunnel syndrome,   Plaintiff declined surgery "suggesting that this impairment may not be as bothersome as alleged." (*Id.*)  The ALJ reasoned that taking these factors in combination, "these aspects of the record indicate that the claimant is only partially credible." (*Id.* at 19.) Even so, the ALJ restricted Plaintiff to a reduced range of light work given the evidence of his left arm amputation, right arm carpal tunnel syndrome, an osteochondral defect of the medial femoral condyle of his left knee, chronic hypertension, phantom limb pain and medication side effects. (*Id.*)

While  "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence," here it is bolstered by Plaintiff's prior work which is inconsistent with his allegations of complete disability.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).   Plaintiff first applied for benefits in 2012, alleging a disability onset date of November 1, 2001.  However, between 2006 and 2011, Plaintiff,  by his own admission, worked on and off as an appliance technician for a laundromat, including lifting and moving heavy machinery.  (A.R. 31-32,  164.) Plaintiff states that he stopped working on March 31, 2011 because he "was laid off due to lack of work and also [his] disability [sic] wwas affecting [his] ability to work." (A.R. 31, 151, 152.)   Plaintiff testified that his low back pain started "when [he] was working --doing the appliances because [he] used to deliver . . . things ranging from 250, to 350 pounds." (A.R. 36.)  He further testified that "somehow [he] was able to do that.  [He] felt healthy enough.  So [he] was delivering the machines, repairing and everything. . . .[O]nce in a while, would feel like oh, my

back." (A.R. 36. *See also* A.R. 32 ("My back and everything wasn't that bad. And then again it started going out.").)

Thus, to the extent that the ALJ discounted Plaintiff's testimony about the intensity, persistence and limiting effects of the alleged symptoms, the ALJ explained his findings with legally sufficient reasons supported by substantial evidence in the record. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (Where, as here, the ALJ's finding is supported by substantial evidence, the Court may not engage in second-guessing.)

### 2. **The ALJ's Step Five Determination is Not Inconsistent with the DOT.**

Plaintiff argues that the ALJ erred at step five because he adopted the findings of the VE identifying jobs that Plaintiff could perform even though "both jobs identified by the VE are inconsistent with Plaintiff's limitations," as detailed in the ALJ's RFC. (Joint Stip. at 15.) Specifically, Plaintiff contends that the identified jobs "of a surveillance systems monitor while not requiring any reaching, handling, fingering or feeling still requires use of his bilateral upper extremities and information clerk at a call center would require plaintiff to do a combination of reaching, handling, and fingering with the bilateral upper extremities." (*Id*. at 16.) Because the ALJ determined that Plaintiff's RFC precluded jobs that require, *inter alia,* reaching, handling, fingering, or feeling with his left upper extremity, Plaintiff claims that the ALJ erred. (A.R. 16; Joint Stip. at 16.)

At step five, the burden shifts to the ALJ to identify jobs that exist in significant numbers in the national economy that the claimant can perform. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.

1   1995). The ALJ can meet this burden by: (1) the testimony of a VE, who can assess
2   the claimant's limitations and identify any existing jobs the claimant can perform; or
3   (2) relying on the Medical-Vocational Guidelines set forth in 20 C.F.R. part 404,
4   Subpart P, Appendix 2. *Lounsburry*, 468 F.3d at 1114; *Tackett*, 180 F.3d at 1100-
5   01. The ALJ may also rely on the DOT  in evaluating whether the claimant is able to
6   perform other work in the national economy. *Johnson*, 60 F.3d at 1435; *see also* 20
7   C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).

9       Here, the ALJ relied on the testimony of the VE to determine whether
10  Plaintiff, given his RFC, could perform other jobs that exist in significant numbers
11  in the national economy.  (A.R. 47.) Following the VE's testimony, the ALJ asked
12  the VE "has your testimony today been according to the DOT?" and received an
13  affirmative response.   (A.R. 47.)   Based on this exchange, the Court cannot
14  determine conclusively that the ALJ met his affirmative responsibility to ask about
15  any possible conflict between the VE's evidence and information provided in the
16  DOT.   *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *See also* SSR
17  00-4p at *4 (describing ALJ's obligation to identify and investigate potential
18  conflicts with the DOT.) *See also Mejia v. Colvin*, 2015 U.S. Dist. LEXIS 146384,
19  17-18 (C.D. Cal. Oct. 28, 2015) (citing *Wentz v. Comm'r Soc. Sec. Admin.*, 401 F.
20  App'x 189, 191 (9th Cir. 2010) (emphasizing that an ALJ is required to directly ask
21  the VE "whether her testimony conflicted with the DOT," and distinguishing cases
22  where the "ALJ asked the VE if her testimony was consistent with the DOT, not
23  whether it conflicted with the DOT," and where the "ALJ asked the VE whether her
24  opinion was based on the DOT.")) However, the Court need not reach this issue
25  because it finds  no inconsistencies between the VE's testimony and the DOT.[2]

---

[2] The Commissioner suggests that "Plaintiff's declination to question the VE undermines his current claim that the jobs identified by the VE were inconsistent with his RFC." (Joint Stip. at 20; see also A.R. 47 "Ms. Carlos, do you have any questions?  No questions, Your Honor.") To the extent that the Commissioner attempts to characterize precedent as supportive of its conclusion, the Court reminds the Commissioner that it is not counsel's burden to identify conflict, and the burden remains with the ALJ under *Massachi* and SSR 00-4p.  Therefore, the fact that

1    According to the DOT job description, a surveillance systems monitor:

2

3    Monitors premises of public transportation terminals to detect crimes or

4    disturbances, using closed circuit television monitors, and notifies

5    authorities by telephone of need for corrective action: Observes television

6    screens that transmit in sequence views of transportation facility sites.

7    Pushes hold button to maintain surveillance of location where incident is

8    developing, and telephones police or other designated agency to notify

9    authorities of location of disruptive activity. Adjusts monitor controls when

10   required to improve reception, and notifies repair service of equipment

11   malfunctions.

12

13   DOT 379.367-010.  According to the DOT job description, an information clerk at a

14   call center:

15

16   Answers telephone calls from customers requesting current stock quotations

17   and provides information posted on electronic quote board. Relays calls to

18   REGISTERED REPRESENTATIVE (financial) 250.257-018 as requested by

19   customer. May call customers to inform them of stock quotations.

20

21   DOT 237.367-046.   Both jobs are assigned exertional levels of "unskilled"

22   "sedentary".

23

24   The only support Plaintiff offers for arguing that the above DOT job

25   descriptions somehow conflict with Plaintiff's RFC limitations as assessed by the

26   ALJ, is to portray the jobs of surveillance system monitor and information clerk at a

27

28   Plaintiff's counsel did not question the VE, or challenge the VE's interpretation or application of the DOT during her
     closing comments, is inconsequential.  (*Id*. at 47-48.)

1    call center as requiring use of the bilateral upper extremities—which was precluded

2    in the RFC limitations.  Notably, Plaintiff does not dispute that according to the

3    DOT, the jobs of surveillance systems monitor and information clerk at a call center

4    *did not actually require* any reaching, handling, fingering, or feeling of the bilateral

5    upper extremities.

6

7        Rather, Plaintiff contends that because both alternative jobs are at the

8    unskilled sedentary exertional level, and most such jobs "require good use of the

9    hands and fingers," Plaintiff cannot perform them due to his amputation of the left

10   arm.  (Joint Stip. at 17-18.)  Specifically, Plaintiff argues that he cannot perform the

11   job of surveillance systems monitor because "[i]t would be difficult for an individual

12   with one arm to push the hold button to maintain surveillance of location where

13   incident is developing and telephone police at the same time to inform them of the

14   developing situation."  (Joint Stip. at 18.)  Similarly, Plaintiff argues that he cannot

15   perform the job of information clerk at a call center because that job requires "an

16   individual to answer or make phone calls all day," which Plaintiff cannot do "with

17   the use of only one arm."  (Joint Stip. at 18.)

18

19       Plaintiff's argument that the assessed RFC is not compatible with the VE's

20   testimony or the DOT is not rooted in objective data concerning how either job is

21   "generally performed" or "actually performed."   Rather, Plaintiff's contention

22   appears to derive entirely from conjecture and personal opinion.  For instance, the

23   DOT does not specify that a surveillance systems monitor must push a hold button

24   with one arm while simultaneously telephoning police with the other arm.  There is

25   also no apparent conflict between the assessed RFC and the job requirement of

26   answering or making phone calls.   Recently, this Court found that such arguments

27   based on "common sense," do not overcome the actual language contained in the

28

1   DOT.  *See e.g. Jones v. Colvin*, 2015 U.S. Dist. LEXIS 33815, **14-15 (C.D. Cal.

2   Mar. 18, 2015).

3

4       In *Jones*, a plaintiff argued that the "ALJ erred in relying on the VE's

5   testimony that plaintiff could perform the occupation of school bus monitor, because

6   it would be 'impossible' for plaintiff to perform this occupation given that she: (1)

7   needs to use a cane whenever changing from sitting to standing, or vice versa; and

8   (2) cannot withstand exposure to concentrated vibration."  *Jones*, 2015 U.S. Dist.

9   LEXIS 33815, at *13.   Although Jones conceded that "the VE's testimony is

10   consistent with the DOT," she maintained that "the ALJ erred because it 'defies

11   common sense' to charge an individual who requires a cane to go from sitting to

12   standing, and vice versa, with maintaining discipline and safety and preventing

13   altercations," and that "[a]nyone who has had the pleasure of riding on a school bus

14   is well aware that the ride is extremely bumpy and has constant vibration."  *Id*. at

15   **14-15.  Unpersuaded, this Court upheld "the ALJ's determination that plaintiff

16   could perform the occupation of school bus monitor," stating that it was "aware of

17   no legal authority that permits an ALJ to reject VE testimony and the DOT

18   whenever he feels it conflicts with 'common sense' and his own personal

19   experiences."  *Id*. at *15.

20

21       Here, as in *Jones*, Plaintiff offers no authority to support his contention that

22   the ALJ should not have relied on "the DOT's description of the requirements for

23   each listed occupation and on VE testimony about the specific occupations that the

24   plaintiff can perform."  *Id*.   Accordingly, the Court finds that the ALJ's

25   determination that Plaintiff, based on the VE's testimony, can perform the

26   occupations of surveillance systems monitor and information clerk, lacks legal error

27   and is supported by substantial evidence.  *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th

28   Cir. 2015); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001)

1   (testimony of a VE constitutes substantial evidence); *Bayliss*, 427 F.3d at 1218

2   (ALJ may rely on "any reliable job information," including the testimony of a VE);

3   *Johnson*, 60 F.3d at 1435.

4

5                                   **CONCLUSION**

6

7        For the reasons stated above, the Court finds that the Commissioner's

8   decision is supported by substantial evidence and free from material legal error.

9   Neither reversal of the ALJ's decision nor remand is warranted.

10

11       Accordingly, IT IS ORDERED that Judgment shall be entered affirming the

12  decision of the Commissioner of the Social Security Administration.

13

14       IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of

15  this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and

16  for defendant.

17

18       **LET JUDGMENT BE ENTERED ACCORDINGLY.**

19

20  DATED: April 21, 2016

21

22                                   _____

23                                   KAREN L. STEVENSON
                                     UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28